UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DAWN K. FRANKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:09-CV-233-TLS |
| | ) |
| ALL ABOUT TRAVEL, INC., and | ) |
| DENISE ZENCKA, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| DENISE ZENCKA, | ) |
| | ) |
| Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAWN K. FRANKO, | ) |
| | ) |
| Counter-Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on the Defendants' Motion for Summary Judgment [ECF No. 72], and the Plaintiff's Motion for Partial Summary Judgment [ECF No. 76]. This litigation involves a wage dispute between the Plaintiff, Dawn K. Franko, and her previous employer, All About Travel, Inc., which is owned and operated by Defendant Denise Zencka. In addition, Zencka has countersued the Plaintiff alleging violations of a non-compete agreement and for malicious prosecution and abuse of process.

**BACKGROUND**

The Plaintiff has sued the Defendants for failure to pay minimum and overtime wages pursuant to the Fair Labor Standards Act (FLSA). There is no dispute that the Defendants

believed that upon hiring the Plaintiff as a sales agent they were not required to pay her an hourly wage or overtime, but could pay her on a commission basis alone. In her Motion for Partial Summary Judgment, the Plaintiff contends that the Court should find as a matter of law that she is an employee entitled to individual coverage pursuant to 29 U.S.C. § 207(a)(1), that Zencka is an employer pursuant to 29 U.S.C. § 203(d), and that the Defendants are liable to the Plaintiff for violations of the FLSA. The Plaintiff contends that a trial is only necessary to determine damages. In response, the Defendants acknowledge that the Plaintiff was a covered employee, and note that the number of hours she worked throughout her employment with All About Travel is disputed. (Defs.' Reply Br. in Opp'n to Pl.'s Mot. for Summ. J. 1–2, ECF No. 78.) Then, in the Defendants' own Motion for Summary Judgment, they go beyond recognizing a dispute and maintain that they do not owe the Plaintiff for any additional compensation for unpaid minimum wages or unpaid overtime because the Plaintiff "grossly over exaggerated the hours that she worked." (Mem. Supp. Defs.' M. Summ J. 14, ECF No. 73.) The Defendants argue that, after all the hours that the Defendants can establish that the Plaintiff did not work are stricken, the Defendants overpaid her by $3.12. The Defendants thus seek summary judgment in their favor on the FLSA claim.

Relying on a federal court's supplemental jurisdiction under 28 U.S.C. § 1367, the Plaintiff has also invoked Indiana's Wage Payment Statute and its damages provision in this litigation. The Plaintiff asks the Court to find that All About Travel is liable as a matter of law under Indiana's Wage Payment Statute for making illegal deductions from certain of her paychecks and for failing to pay the Plaintiff all of the commissions she earned. Additionally, the Plaintiff contends that some of her damages are undisputed and can be calculated and awarded as

a matter of law without a trial. In response, All About Travel characterizes the deductions from the Plaintiff's paychecks as allowable reimbursement for overpayment of wages, in accordance with Indiana statute. With respect to the commission payments, All About Travel argues that the Plaintiff was not entitled to receive commission payments for travel that was not consummated until after the Plaintiff ended her employment with All About Travel because the Plaintiff did not service the customers through the completion of their trips. All About Travel asks the Court to grant summary judgment in its favor on the Plaintiff's claim under the Indiana wage statute.

In the course of this litigation, Zencka countersued the Plaintiff for breach of a confidentiality and covenant not to compete agreement. The Plaintiff argues that she is entitled to summary judgment on this claim because Zencka is relying on a document that the Plaintiff never signed. Zencka maintains that this is false and that the Plaintiff did sign the Agreement at the beginning of her employment, but that she took it with her when she voluntarily left her employment.

In other counterclaims Zencka asserts, she alleges that the Plaintiff is liable for malicious prosecution, abuse of process, and filing a frivolous action. The Plaintiff moves for summary judgment on these claims on grounds that Zencka cannot satisfy the elements of each cause of action. Zencka does not address the Plaintiff's request for summary judgment on these claims, nor move herself for summary judgment.[1]

## SUMMARY JUDGMENT STANDARD

---

[1] Although the Defendants filed a Motion for Summary Judgment, it should have been designated as a motion for partial summary judgment because it does not address all of the claims that are pending in this litigation, specifically the malicious prosecution and abuse of process claims and the claims under the non-compete agreement.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in her favor; if she is unable to "establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be granted. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## STATEMENT OF FACTS

### A. The Plaintiff's History with All About Travel

Zencka is the owner and operator of All About Travel, a travel agency business. The Plaintiff began working for All About Travel's Valparaiso, Indiana, office as a part-time hourly receptionist on November 27 or December 2, 2006. She was not paid for the work she performed in December and January until February 2007. Zencka maintains that the Plaintiff requested delayed payment due to some concern about her employment in a doctor's office, where she received benefits.

On February 9, 2007, the Plaintiff completed the Travel Agent Proficiency Course and passed the Travel Agent Proficiency Test. At this time, All About Travel hired her as a commissioned travel agent. The parties have not provided any written agreement or contract

addressing the parties understanding regarding commissions. According to Zencka, the Plaintiff was to receive 30% of the total commission All About Travel received on vacation packages that the Plaintiff sold and for which the client had completed travel. Zencka also stated during her deposition that the agreement with regard to commissions was communicated verbally:

> Q. What was the specific agreement with regard to commissions, as far as—can you articulate to me what [the Plaintiff]—when she would earn a commission?
> A. It was a clear understanding that they had to start and follow the process all the way through in order to receive the commission. And following the process all the way through included sending out thank you notes at the end of their travel and reaching out and getting clients' comments and concerns about their trip after they traveled. That in order for a commission to be complete, they had to follow it all the way through. It was a clear understanding between myself, [the Plaintiff], and the other employees of All About Travel.
> Q. Was that something that was orally discussed, or is that something that's in writing?
> A. It was something orally discussed many times in the office. And it was discussed with her at the time of the interview.

(Zencka Dep. 289, ECF No. 74 at 90.) Zencka also stated that the timing of a commission payment to an agent varied depending on when the hotel, resort, or cruise line paid the commission to All About Travel. Individual agents would not receive payment until All About Travel was paid its commission. Because the Defendants designated the Plaintiff as a commission only agent, they mistakenly believed that they were not required to pay her a minimum hourly wage or compensate her for overtime hours. Therefore, the Defendants did not keep track of the Plaintiff's specific hours during the eight months All About Travel employed her as a travel agent (from February 2007 to October 2007).

All About Travel tracked employee schedules with Google calendar. The employees had access to the calendar and could change it. The set hours for sales agents were 9:30AM to

6:00PM on Monday through Friday, 9:30AM to 4:00PM on Saturday, and 11:00AM to 3:00PM on Sunday. At least one agent was expected to be available during this time to take customer calls. However, even when a commissioned travel agent was scheduled for an entire day, the agent could decide not to come in, to leave early, to come in late, or to take a long lunch—depending on the needs of the business during different seasons and the number of agents available. The agents would work the schedule out amongst themselves. Zencka testified that agents were required to take a thirty minute lunch break, but were not required to leave their desk during the break, and that this policy was set forth in the Office Handbook. The Handbook provides that "[e]very employee is entitled to one ½ hour lunch break per 8 hours worked. Exceptions must be cleared through Denise [Zencka]." (Office Handbook ¶ 41, ECF No. 74 at 122.) Trade shows and other events were also noted on the calendar to make agents aware of when they were taking place. For example, the February 2007 calendar shows an Irish Trade Show, Disney Seminar, and Sandals Night. The trade shows involved free dinners and alcoholic drinks and prize giveaways, but no actual training. Agents were invited to attend the trade shows, but Zencka considered attendance optional. Some seminars were considered mandatory because they involved training, and these were also noted on the calendar. In support of the hours she actually worked, the Plaintiff has provided a copy of All About Travel's Google calendar with her handwritten notes documenting her hours. For example, on February 7, 2007, the calendar notes the Irish Trade Show at 4PM, and the handwritten note says: "9:30AM–10:30PM including tradeshow." (Pl.'s Ex. 8, ECF No. 74 at 100.)

  The Defendants paid the Plaintiff for the hours she submitted while working as a part-time receptionist. The Defendants paid the Plaintiff commission only during the remainder of her

employment, but made certain deductions from her paychecks in July and November 2007. The Defendants maintain that the Plaintiff is not entitled to any additional wages because she has claimed compensable hours that extend beyond All About Travel's office hours, for hours that exceeded seminar presentations, for hours she attended optional trade shows, for non-working trips she went on to Cancun, Disney World, Jamaica, Punta Cana, and Barbados, for a non-working award dinner, and for a thirty-minute mandatory lunch break, and because the Defendants already overpaid her for commissions.

On October 10, 2007, the Plaintiff voluntarily quit her employment with All About Travel. When she left All About Travel, the Plaintiff moved the bookings she had made for customers who had not yet completed their travel to another travel agency where she began working. This travel agency, which allows the Plaintiff to operate under her own name, is also located in Valparaiso. All About Travel did not pay the Plaintiff commission for travel that she sold where the client did not complete the travel until after the Plaintiff left her employment with All About Travel.

**B.     The Confidentiality and Non-Compete Agreement**

The Plaintiff maintains that, although Zencka gave her a copy of a Confidentiality and Non-Compete Agreement at the beginning of her employment, she never signed it. Carole Prokopeak, who worked as the secretary to All About Travel management from June 1, 2005, until August 2011, was responsible for familiarizing new hires with office procedure and provide employment and personnel documents, including the Non-Compete Agreement. She maintains, through her sworn affidavit, that she gave the Plaintiff the Non-Compete Agreement and that she

later saw the signed Agreement in the Plaintiff's personnel file, because she periodically checked the file for that very purpose. Prokopeak stated that the files were kept in Zencka's unlocked office in an unlocked desk drawer. Another travel agent, Paula Publicover, who worked in the Valparaiso All About Travel office, also stated in a sworn affidavit that any records pertaining to the operation of the office, including personnel files, were maintained in Zencka's office in her desk drawer, that the office and desk drawer remained unlocked, and that she observed the Plaintiff working on the computer on Zencka's desk on several occasions. According to Prokopeak, within a week or two after the Plaintiff ended her employment with All About Travel, she noticed that the signed agreement was missing from the Plaintiff's personnel file. No Agreement, signed or unsigned, has been provided to the Court.

## ANALYSIS

A.   **FLSA Claims**

An employee who brings an FLSA action for "'unpaid minimum wages or unpaid overtime compensation . . . has the burden to prove that he performed work for which he was not properly compensated.'" *Adams v. United States*, 471 F.3d 1321, 1326 (Fed. Cir. 2006) (alteration in original) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded in part by statute*, 29 U.S.C. § 254). However, the burden of production shifts to the employer when the employer has failed to keep adequate and accurate records. *Mt. Clemens Pottery Co.*, 328 U.S. at 687. Courts must give due regard "to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the

most probative facts concerning the nature and amount of work performed." *Id.*

All About Travel did not pay the Plaintiff an hourly wage or keep records of hours worked because it was operating under the mistaken belief that it was not required to pay the Plaintiff as an hourly employee because she was a commissioned sales agent. In the situation where an employer fails to keep accurate or adequate records, then an employee

> has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and *if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference*. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687–88 (emphasis added).

The only evidence the Plaintiff offers at this stage of the litigation is her handwritten notations of the hours she worked. However, the Plaintiff has not authenticated these handwritten documents. Additionally, they are out of court statements offered for the truth of the matter asserted—the number of hours the Plaintiff worked—but the Plaintiff has not offered an exception to the rule excluding hearsay testimony. Thus, on the record currently before the Court, there have been no assurances of the trustworthiness of the handwritten notes. On the other hand, it is undisputed that the Defendants did not pay the Plaintiff an hourly wage and she, thus, performed work for which she was improperly compensated. The question is how much work. All About Travel has submitted testimony suggesting that the hours the Plaintiff documented for herself were not compensable, such as time outside regular office hours, time for lunch, and time she was away on non-working vacations and attending free dinners. These submissions create genuine issues of material fact, but do not, contrary to All About Travel's

assertions, establish that All About Travel is entitled to summary judgment. For example, All About Travel asserts that employees were required to take one-half hour for lunch, but the Office Handbook only states that employees are "entitled" to the lunch break. The Plaintiff submits that she did not take lunch breaks, but worked throughout the lunch period. All About Travel presents evidence that other employees occasionally saw the Plaintiff take a lunch break. All About Travel insists that trade shows and other seminars where optional and not compensable work time. The Office Handbook communicates that attendance at these functions is encouraged for maximum performance of a travel agent's job. All About Travel does not attempt to explain the impact of this encouragement under the FLSA's standards for determining compensable time. Moreover, since the Defendants did not pay the Plaintiff for any of her hours, it is unclear how they overpaid her, even if many of her claimed hours are stricken.[2] In short, the record has not been sufficiently developed to conclude that the All About Travel is entitled to summary judgment on the Plaintiff's FLSA claim, and genuine issues of material fact remain regarding the number of compensable hours that the Plaintiff worked and what compensation remains due for these hours.

**B.     Indiana Wage Payment Claims**

"[T]he [Wage] Payment Statute provides an avenue for relief to employees seeking unpaid wages who voluntarily leave their employment or who remain employed and whose

---

[2] The Court has surmised from the summary judgment submissions that the Defendants believe that they overpaid the Plaintiff for commissions and thus no hours of service remain uncompensated. However, the Defendants have not clearly articulated this theory in their briefing, or designated admissible evidence to support this claim, further revealing why this case is not appropriate for summary judgment.

wages are overdue." *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011); Ind. Code § 22-2-5-1 *et seq.* Subsection 1(a) provides that "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." Ind. Code § 22-2-5-1(a). The Wage Payment Statute governs both the frequency and the amount that an employer must pay its employee. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007); *E & L Rental Equip., Inc. v. Bresland*, 782 N.E.2d 1068, 1070 (Ind. Ct. App. 2003) (citing *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 (Ind. 2002)). Indiana Code § 22-2-5-2 mandates the payment of wages due to an employee as provided in Ind. Code § 22-2-5-1. Failure to do so subjects the employer to liquidated damages of ten percent of the amount due for each day that the amount remains unpaid, not to exceed double the amount due, and to attorney fees. Ind. Code § 22-2-5-2.

Here, the Plaintiff has not clearly identified a dispute regarding the frequency of the payments, but claims that All About Travel violated the Statute when it failed to pay her all the amounts she was due. The Plaintiff identifies two categories of payments that she contends Defendant All About Travel failed to pay: wages that she earned as sales commissions; and unauthorized deductions from her paychecks in July and November 2007. All About Travel argues that the Plaintiff is mistaken as to the commission amounts due to her because she did not satisfy all the requirements for payment, and that it properly deducted money as reimbursement for wages that the Defendant previously overpaid the Plaintiff.

1.     Commission Payments

The Plaintiff contends that her unpaid commissions qualify as wages for purposes of the Wage Payment Statute, and thus All About Travel's failure to pay them entitles her to statutory damages. All About Travel argues that the Plaintiff has not established, as a matter of law, that she earned those commission, and that its evidence shows that she did not earn them.

"As a general rule, a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer." *Vector Eng'g & Mfg. Corp. v. Pequet*, 431 N.E.2d 503, 505 (Ind. Ct. App. 1982). The Plaintiff maintains that this general rule applies to the situation here. However, she cites the commission terms as thirty percent of the total commission that All About Travel received on vacation packages she sold *and* for which the client fully completed travel. These terms appear to require more than mere acceptance of the vacation order; they require the completion of travel. Indiana courts recognize that the "general rule may be altered by a written agreement by the parties of by the conduct of the parties which clearly demonstrates a different compensation scheme." *Vector Eng'g*, 431 N.E.2d at 505; *see also Davis v. All Am. Siding and Windows, Inc.*, 897 N.E.2d 936, 940 (Ind. Ct. App. 2008) (same). In addition to the requirement that clients complete their travel, All About Travel has presented other evidence of the parties' conduct that shows their contemplation of a compensation scheme for commissions that differs from the general rule. All About Travel did not pay an agent her portion of the commission until All About Travel received its commission payment from the hotel, cruise line, or other relevant travel entity. Moreover, Zencka stated that she verbally communicated to travel agents, including the Plaintiff, that commissions were not earned until the travel was completed and the agent had followed through

with the client post travel. The Plaintiff does not present any evidence to dispute this understanding or course of conduct, and no evidence that these requirements were satisfied for the commissions she claims that All About Travel still owes her. The Plaintiff claims that she is entitled to commission for travel completed in November 2007, December 2007, January 2008, February 2008, April 2008, May 2008, June 2008, and October 2008. Having voluntarily ended her employment with All About Travel on October 10, 2007, she could not serve the clients who traveled on these dates through the completion of their travel. And if the clients moved their bookings to another agency, All About Travel did not receive the commission. All About Travel is entitled to summary judgment on that portion of the Wage Payment Statute that relates to commission payments.[3]

2.  Deductions

Indiana Code § 22-2-6-1 *et seq.* governs the requirements for deductible assignment of wages. "Any direction given by an employee to an employer to make a deduction from the wages to be earned by said employee, after said direction is given, shall constitute an assignment of the wages of said employee." Ind. Code § 22-2-6-1(a); *see also E & L Rental Equip. v. Bresland*, 782 N.E.2d 1068, 1071 (Ind. Ct. App. 2003) ("All deductions from wages constitute an assignment, which must meet specified statutory requirements."). An assignment of wages is valid only if it is in writing, signed by the employee, revocable by its terms at any time by the

---

[3] Even if the Court found a triable issue of fact regarding whether the All About Travel failed to pay commissions due to the Plaintiff, the Court would also have to find that the All About Travel's commission payments are considered wages under the Wage Payment Statute, an analysis that would require the Court to look to the substance of compensation, not the name given to it, and to consider a variety of factors. *See Thomas v. H & R Block E. Enters., Inc.*, 630 F.3d 659, 664 (7th Cir. 2011) (analyzing Indiana law).

employee upon written notice to the employer, and agreed to in writing by the employer. I.C. § 22-2-6-2(a)(1)(A)–(D). An executed copy of the assignment is to be delivered to the employer within ten days after its execution. Ind. Code § 22-2-6-2(a)(2). The assignment must also be for a purpose designated in the statute. Ind. Code § 22-2-6-2(b).

"If an employer has overpaid an employee, the employer may deduct from the wages of the employee the amount of the overpayment," and such a deduction is not considered an assignment of wages. Ind. Code § 22-2-6-4(a). However, the employer must give the employee two weeks' notice and the amount of the overpayment cannot be in dispute. *Id.* § 22-2-6-4(a), (b).

The Plaintiff points to payments totaling $1,025.00 that All About Travel deducted or withheld from various paychecks. All About Travel contends that the deductions cited by the Plaintiff were authorized repayments of overpaid wages under § 22-2-6-4. All About Travel asserts that the $125.00 deduction from the Plaintiff's July 15, 2007, paycheck was repayment of an advance, and that the $200.00 deduction from the Plaintiff's November 3, 2007, paycheck was reimbursement of airfare All About Travel paid for the Plaintiff to take option travel after the airline would not accept the Plaintiff's personal credit card. All About Travel attempts to characterize $700.00 deducted from the Plaintiff's November 14, 2007, paycheck as an overpayment of commissions. All About Travel deducted the sum for booking and cancellation fees that All About Travel incurred when the Plaintiff transferred booked travel to another agency.

The Defendant's evidence that the deduction of $125 was for an undefined "advance" is too vague and ill-defined to determine that it falls within Indiana Code § 22-2-6-4 as repayment

of overpaid wages. The Defendants' attempts to fit within the definition of an overpayment of wages money it paid to an airline for air travel and to other organizations for booking and cancellation fees is also without merit. Implicit in Indiana's statutory definitions of wages "is the concept that the payments are earned for services rendered." *Design Indus., Inc. v. Cassano*, 776 N.E.2d 398, 402 (Ind. Ct. App. 2002) (relying on definitions from Ind. Code § 22-2-9-1(b) and § 22-4-4-2). The money All About Travel was attempting to recoup from the Plaintiff cannot be considered overpayment for services rendered. Even if the various deductions could be characterized as overpayment of wages, there is no indication in the record that All About Travel provided two weeks' notice for any of these deductions. Accordingly, when All About Travel deducted $1,025.00 from the Plaintiff's paychecks, it made invalid assignments of her wages and failed to pay her "the amount due." Ind. Code § 22-2-5-1(a); *see E & L Rental Equip.*, 782 N.E.2d at 1071 (finding that because deductions were improper under assignment statute, the employer failed to pay the plaintiff the amount due and violated the Wage Payment Statute). For this failure, All About Travel is also required to "pay to such employee for each day that amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due." Ind. Code § 22-2-5-2; *Mathews v. Bronger Masonry, Inc.*, 772 F. Supp. 2d 1004 (S.D. Ind. 2011) (holding that when an employer docked the plaintiff's pay without following the statutory requirements for an assignment of wages the plaintiff was due that amount and entitled to liquidated damages under Ind. Code § 22-2-5-2). Given the length of time that has passed, the Plaintiff reasonably requests $2,050.00—double the amount due—as liquidated damages against All About Travel. This amount will be added to the $1,025.00 amount for an award of $3,075. As a matter of law, the Plaintiff is also entitled to an

award of attorney's fees, limited to work performed on this claim.

## C. Breach of Non-Compete and Confidentiality Agreement

The Plaintiff seeks summary judgment on the counterclaim against her for violation of a Non-Compete and Confidentiality Agreement on grounds that she never entered into such an agreement. Indeed, the Defendants have not been able to produce the signed document—nor have they provided any evidence of the terms of the Agreement. They have, however, presented sworn statements that the Plaintiff was provided an unsigned copy of the Non-Compete and Confidentiality Agreement that it provided to all new hires, that a signed copy of the Agreement was kept in the Plaintiff's personnel file, that the personnel file was kept in a place that the Plaintiff had access to, and that they noticed the document was missing after the Plaintiff left her employment with All About Travel. At this stage of the proceedings, the Court must credit the nonmovant's version of the facts, and resist the temptation to evaluate the relative veracity of each party's facts, provided the claims are not implausible on their face. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761–62 (7th Cir. 2006) (citing *Payne v. Pauley*, 337 F.3d 767, 770–71 (2003)). The court does not "vouch for the truth of the facts . . . but rather merely uses them to determine whether the case can be resolved as a matter of law." *Id.* at 762.

Construing all inferences most favorably to the Defendants, a reasonable jury could resolve this factual dispute in favor of the Defendants and conclude that the parties entered into a valid written contract, the terms of which prohibited competition. *See SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009) (The Defendants' evidence creates a genuine evidentiary dispute because it is "reasonably contestable" whether the contract existed and "a reasonable jury could find for either party.");

*Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997). Although the terms of that Agreement have not been provided to the Court, the Plaintiff has not requested summary judgment on the basis that she did not violate the terms. The Court finds material issues of fact exist concerning the both the existence and the terms of this alleged Agreement. Accordingly, the Plaintiff is not entitled to summary judgment on the claim for breach of a Non-Compete and Confidentiality Agreement.

### D.     Malicious Prosecution, Abuse of Process

Zencka's Counterclaim against the Plaintiff includes claims for malicious prosecution and abuse of process. The Plaintiff argues that she is entitled to summary judgment on these claims because Zencka has no evidence to support such claims. Under Indiana law, the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001); *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005). Malice may be shown by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances. *F.W. Woolworth Co. v. Anderson*, 471 N.E.2d 1249, 1254 (Ind. Ct. App. 1985). The tort of abuse of process consists of two elements: (1) ulterior motive and (2) use of process that would not be proper in the normal prosecution of the case. *Watters v. Dinn*, 633 N.E.2d 280, 288 (Ind. Ct. App. 1994). Under Indiana law, a plaintiff must have some evidence tending to show that the defendant used the process for an end other than that for which

it was designed. *Nat'l City Bank, Ind. v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997), *opinion supplemented on other grounds* 691 N.E.2d 1210 (Ind. 1998); *Comfax Corp. v. N. Am. Van Lines Inc.*, 638 N.E.2d 476, 481 (Ind. Ct. App. 1994).

The Plaintiff has established that she had reasonable grounds to believe that she was not paid all of the wages the Defendants owed her. Indeed, the Defendant have admitted that they erroneously believed the Plaintiff, as a commissioned sales agent, was not entitled to minimum wage or overtime. In addition, the Plaintiff has prevailed on a portion of her wage claim under Indiana law. The Defendants offer no evidence that the Plaintiff acted with personal animosity or an ulterior motive when she initiated the wage claims against the Defendants. Nor is there any evidence from which a reasonable jury could conclude that the Plaintiff did not employ the proper legal process when she sued her former employer in federal court for violations of federal law and invoked the Court's supplemental jurisdiction for the claims under Indiana law. Due to the complete lack of evidence on the necessary elements, the claims for malicious prosecution and abuse of process will not be allowed to proceed.

## CONCLUSION

For the reasons stated above, the Court DENIES IN PART AND GRANTS IN PART the Defendants' Motion for Summary Judgment [ECF No. 72], and DENIES IN PART AND GRANTS IN PART the Plaintiff's Motion for Partial Summary Judgment [ECF No. 76]. The Plaintiff is entitled to recover $3,075 from All About Travel as damages and liquidated damages, and to an award of attorney's fees under the Wage Payment Statute. The Plaintiff's claims for unpaid commissions under Indiana's Wage Payment Statute and the Counter-Plaintiff's claims

for malicious prosecution and abuse of process are dismissed. The Plaintiff's FLSA claim and the Counter-Plaintiff's claim for breach of a Confidentiality and Non-Compete Agreement will be set for trial. The Court sets a telephonic status conference for July 25, 2012, at 2:00 PM Eastern time before Judge Theresa L. Springmann. The Court will initiate the call.

     SO ORDERED on July 9, 2012.

                               s/ Theresa L. Springmann
                              THERESA L. SPRINGMANN
                              UNITED STATES DISTRICT COURT
                              FORT WAYNE DIVISION